UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EUGENE HUMBERT,

        Petitioner,                           Hon. Janet T. Neff

v.                                         Case No. 1:10-CV-263

WILLIE SMITH,

        Respondent.

_____/


**REPORT AND RECOMMENDATION**

        This matter is before the Court on Humbert's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Humbert's petition be **denied**.


**BACKGROUND**

        As a result of events which occurred on or about August 22, 2005, Petitioner, who was then incarcerated by the Michigan Department of Corrections, was charged with assaulting a prison guard and possessing a weapon. (Plea Transcript, February 13, 2006, 3-13). Petitioner was also charged with being a fourth degree habitual felon (i.e., having been previously convicted of three or more felonies). Pursuant to a plea agreement, Petitioner agreed to (1) plead guilty to the assault charge; and (2) plead guilty to having been convicted of one previous felony. In return, the

1

prosecution agreed to dismiss the possessing a weapon and fourth habitual offender charges. Petitioner was sentenced to serve 30-72 months in prison, to be served consecutively to the sentence he was serving when he committed this offense. (Sentence Transcript, March 13, 2006, 3-10).

Attorney Dana Carron was subsequently appointed by the trial court to represent Petitioner on appeal. On September 22, 2006, Carron moved in the trial court to withdraw as Petitioner's counsel. (Dkt. #66). Carron asserted that Petitioner had insulted him with numerous obscenities and racial insults resulting in "a total breakdown in the attorney-client relationship." (Dkt. #66). Carron's motion to withdraw was granted and Elmer White was appointed to represent Petitioner on appeal. (Dkt. #67-68). Soon thereafter, White moved in the trial court to withdraw as Petitioner's counsel. (Dkt. #73). The basis for White's request was that he discerned no issue which could arguably support relief. (Dkt. #73). White's motion was granted on February 26, 2007. (Dkt. #75).[1]

On April 10, 2007, the trial court authored a letter to Petitioner informing him that he was not presently represented by counsel and, furthermore, that "an Application for Leave to Appeal your conviction has not been filed." (Dkt. #76). Petitioner was instructed that "you may file an Application for Leave to Appeal your conviction with the Court of Appeals if you desire." Petitioner was informed that he could file such an application himself or "request another court-appointed attorney." Petitioner was cautioned, however, that "[i]f you wish to request new counsel, you should do so promptly." *Id.*

---

[1]   Pursuant to Michigan Court Rule 7.208(G), during the "pendency of an appeal involving an indigent person, the trial court retains authority to appoint, remove, or replace an attorney except as the Court of Appeals otherwise orders." *See also, People v. Earls*, 2010 WL 5175197 (Mich. Ct. App., Dec. 21, 2010) ("during the pendency of an appeal" by an indigent defendant, the trial court "retains [the] authority" to appoint, remove, or replace appellate counsel "unless this Court orders otherwise").

On or about April 23, 2007, Petitioner moved in the trial court for the appointment of counsel. (Dkt. #77-78). On April 24, 2007, the trial court authored a letter to Petitioner acknowledging receipt of his motion. (Dkt. #77). The letter informed Petitioner that "this Court will not appoint another appellate attorney for you [and] [y]ou are free to pursue your own remedy." Petitioner was further informed that "you are no longer eligible to file an Appeal of Right[2] or an Application for Leave to Appeal." *Id.* The trial court formally denied Petitioner's motion for appointment of counsel on May 8, 2007. (Dkt. #78).

Petitioner did not seek (or attempt to seek) relief in the Michigan Court of Appeals, but instead, on June 11, 2007, filed in the trial court a motion for relief from judgment in which he asserted the following claims:

> I.      The pre-trial evaluation of Petitioner's mental condition at the time of the offense was inaccurate depriving Petitioner of due process of law.
>
> II.     Judicial misconduct violating due process of law.[3]

(Dkt. #79).

The trial court denied Petitioner's motion on July 11, 2007. (Dkt. #80). Petitioner subsequently moved again in the trial court for relief from judgment, asserting the same issues identified above. (Dkt. #81). On November 6, 2007, Petitioner's motion was denied on the ground that it was a "successive motion" in violation of Michigan Court Rules. (Dkt. #81).

---

[2]  The reference to an "Appeal of Right" appears to have been a misstatement as Petitioner, by virtue of pleading guilty, never enjoyed the right to pursue an appeal as of right. *See* Mich. Comp. Laws § 770.3(1)(d); *People v. Maxson*, 759 N.W.2d 817, 820 (Mich. 2008).

[3]  In this claim, Petitioner advanced two arguments: (1) denial of his motion to withdraw his guilty plea was improper, and (2) the trial judge unduly delayed, to Petitioner's prejudice, informing Petitioner that he could represent himself on his appeal as of right.

On or about February 25, 2008, Petitioner filed in the Michigan Court of Appeals an application for leave to appeal in which he challenged the denial by the trial court of his initial motion for relief from judgment. (Dkt. #29). Petitioner further asserted that the trial court's denial of his request for the appointment of counsel (following the court's decision allowing Elmer White to withdraw) was a deprivation of his constitutional right to counsel. (Dkt. #29). Petitioner's application for leave to appeal was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (Dkt. #29). Petitioner later moved in the Michigan Supreme Court for leave to appeal the decision by the Michigan Court of Appeals. (Dkt. #30). In his motion, Petitioner asserted: (1) the same issues he presented to the Michigan Court of Appeals; (2) the two claims asserted in his motions for relief from judgment filed in the trial court; and (3) the additional claim that he was "incompetent to stand trial." (Dkt. #30). Petitioner's application for leave to appeal was denied on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (Dkt. #30).

On February 10, 2010, Petitioner again moved in the Michigan Court of Appeals for relief asserting the following claims:

I.    The trial court lacked subject matter and personal jurisdiction.

II.   The trial court lacked jurisdiction to convict and sentence Petitioner because the prosecutor failed to certify the charges on the record.

(Dkt. #31).

Before receiving a decision on this matter, Petitioner initiated the present action. (Dkt. #1). Petitioner's application for relief was later denied by the Michigan Court of Appeals.

4

(Dkt. #31). There is no indication that Petitioner appealed this determination to the Michigan Supreme Court. On May 19, 2010, Humbert amended his petition in this Court. (Dkt. #13). On April 20, 2012, Humbert moved to again amend his petition, a request which the Court subsequently granted. In his Second Amended Petition, Humbert asserts the following claims:

I.     The trial court deprived Defendant of his Sixth Amendment right to counsel.

II.    The trial court deprived Defendant his right to present an insanity defense.

III.   The trial court violated Petitioner's due process rights by "sentencing a person who was suffering at the time of this offense."

IV.    Ineffective assistance of counsel.

V.     The trial court abused its discretion by not granting Petitioner's motion to withdraw his plea.

(Dkt. #92).

Plaintiff subsequently amended his complaint to dismiss claims II, III, and IV, as such have not been properly exhausted. (Dkt. #91, 93). Accordingly, presently before the Court are the following claims: (1) Petitioner was denied his Sixth Amendment right to counsel (Habeas Claim I); and (2) the trial court improperly denied Petitioner's motion to withdraw his guilty plea (Habeas Claim V).

## STANDARD OF REVIEW

Humbert's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the

substantive standards for granting habeas relief under the following provisions:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>>
>> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The

*Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785. If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not

addressed by the state courts).

The two habeas claims presently before the Court (Habeas Claims I and V) are subject to the deferential standard herein articulated. In his initial motion for relief from judgment, filed in the trial court, Petitioner asserted the claim that his motion to withdraw his guilty plea was improperly denied. The trial court denied this claim on the merits. Petitioner did not assert his denial of counsel claim in the trial court, but instead asserted it for the first time in the Michigan Court of Appeals when appealing the denial of his motion for relief from judgment. Petitioner's motions for leave to appeal were denied, however, by the Michigan Court of Appeals and later the Michigan Supreme Court. Neither court articulated the precise rationale on which their decisions rested, but instead simply concluded that Petitioner failed to "meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)."

The presumption that the state court adjudicated a claim "on the merits" applies unless "there is reason to think some other explanation for the state court's decision is more likely." As the Sixth Circuit has recognized, a court may deny relief under Rule 6.508(D) for procedural or substantive reasons. *See, e.g., Guilmette v. Howes*, 624 F.3d 286, 289-91 (6th Cir. 2010) ("[i]n some cases, the context of a brief order citing Rule 6.508(D) clearly indicates that the state appellate court is affirming the lower court's determination that a petitioner's claims are procedurally defaulted," but "Michigan practice [also] confirms that brief orders citing Rule 6.508(D) in some cases refer to a petitioner's failure to meet his burden on the merits"); *Abela v. Martin*, 380 F.3d 915, 922 (6th Cir. 2004) (same).

Given that the trial court denied Petitioner's motion for relief from judgment on substantive, rather than procedural, grounds, the context in which the relevant orders were issued

does not suggest that such were not based "on the merits." The Court likewise discerns no basis for concluding that the courts' reliance on Rule 6.508(D) was "more likely" the application of a procedural bar as opposed to a decision on the merits. In the absence of anything in record suggesting that the reliance on Rule 6.508(D) by the Michigan Court of Appeals and Michigan Supreme Court was not a determination on the merits of the claims presented, the Court must presume that the habeas claims in question (Habeas Claims I and V) were denied "on the merits" in state court and, therefore, evaluate such pursuant to the deferential standard articulated above. *See Donaldson v. Booker*, 2012 WL 5862467 at *5 (6th Cir., Nov. 19, 2012) ("absent some indication or Michigan procedural principle to the contrary," an order denying leave to appeal for failure to "meet the burden of establishing entitlement to relief under MCR 6.508(D)" constitutes a decision on the merits to which AEDPA deference applies).

## ANALYSIS

### I. Withdrawal of Guilty Plea

As previously noted, Petitioner was originally charged with assaulting a prison guard, possessing a weapon, and being a fourth degree habitual felon. Petitioner agreed to plead guilty to the assault charge and having been convicted of one previous felony in return for the dismissal of the weapon possession and the fourth habitual offender charges. Petitioner now asserts that his guilty plea was constitutionally invalid because he "entered his guilty plea not knowing and understanding that he could be sentenced at the high end of the guidelines."

A guilty plea is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Following a guilty plea

10

"nothing remains but to give judgment and determine punishment." *Id.* By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Id.* at 243. To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

As noted above, the *Boykin* Court identified certain rights which a criminal defendant waives by pleading guilty. While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and

voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 at *2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

Accordingly, the relevant question is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading guilty. Rather, as noted above, the question is whether Petitioner's decision to plead guilty was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

At the February 13, 2006 plea hearing, the trial judge discussed the matter at length with Petitioner, Petitioner's counsel, and the prosecuting attorney. Petitioner and his attorney both acknowledged that they understood the parameters of the plea agreement. (Plea Hearing, February

12

13, 2006, 3-5). The trial judge confirmed with Petitioner that he understood the potential penalty that accompanied a conviction, as a second habitual felon, for assaulting a prison guard. Specifically, the trial judge confirmed that Petitioner understood that if convicted on the assault charge alone he faced the following punishment: up to four years in prison and/or a fine of up to $4,000.00 plus court costs. (Tr. 5). The trial judge further confirmed that Petitioner understood that by also pleading guilty to being a second habitual felon, the potential penalty was increased to up to six years in prison.[4] (Tr. 5). The trial judge also confirmed that Petitioner understood that because the offense in question, assaulting a prison guard, was committed while he was incarcerated his sentence for such would be served consecutively to any other sentences he was then serving. (Tr. 6).

The trial judge ensured that Petitioner understood that by pleading guilty he was surrendering the following rights: (1) the right to jury trial or bench trial; (2) the right to be represented by counsel at trial; (3) the right to confront and cross-examine the witnesses against him; (4) the right to subpoena and question witnesses in his defense; (5) the right to testify on his own behalf; (6) the right to remain silent at trial and not be compelled to testify; (7) the right to not have any such silence introduced as evidence of his guilt; and (8) the right to be presumed innocent and to make the government prove his guilt beyond a reasonable doubt. (Tr. 6-8). The trial judge also ensured that Petitioner understood that if he pleaded guilty he would forfeit the right to pursue an appeal as of right in the Michigan Court of Appeals and could instead obtain appellate review in that court only by leave of court. (Tr. 8). Petitioner stated that he was pleading guilty because he

---

[4] If Petitioner had instead been convicted of possessing a weapon and being a fourth habitual felon, he faced the possibility of being sentenced to life in prison. *See* Mich. Comp. Laws §§ 769.12, 800.283, 800.285.

committed the crime in question and that his decision was made freely and voluntarily. (Tr. 9). The trial judge accepted Petitioner's guilty plea, finding that such was "freely, knowingly, and intelligently made." (Tr. 13).

In sum, Petitioner was sufficiently informed of the many rights he would be surrendering, as well as the punishment he faced, if he pleaded guilty. Moreover, by accepting the plea bargain, Petitioner was able to avoid a possible life sentence and instead was sentenced to serve only an additional 30-72 months in prison. The Court concludes, therefore, that the decision by the trial court to deny Petitioner's motion to withdraw his guilty plea is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue on which habeas relief may be granted.

## II.      Denial of the Right to Counsel

As discussed above, attorney Dana Carron was initially appointed to represent Petitioner on appeal. Carron was subsequently permitted to withdraw at which point Elmer White was appointed to represent Petitioner on appeal. White later sought to withdraw as Petitioner's counsel, filing in the trial court a "Motion to Withdraw (Anders Brief) because Appointed Appellate Counsel Cannot Find Any Issue of Arguable Merit to Apply for Leave to Appeal to the Court of Appeals." (Dkt. #73). White's motion was granted, leaving Petitioner without legal representation. Petitioner asserts that the trial court's decision to permit White to withdraw and, moreover, to deny on the same grounds his subsequent motion for a third appellate attorney violated his constitutional right to counsel.

While the Supreme Court has long recognized that the Constitution affords to indigent criminal defendants the right to counsel on a first appeal as of right, it is also well accepted that this right "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Smith v. Robbins*, 528 U.S. 259, 277-78 (2000) (citations omitted). In an attempt to balance these two interests, states have enacted or authorized procedures by which appointed appellate counsel can withdraw from representing an indigent defendant on appeal on the ground that an appeal is frivolous or lacking in arguable issues. In *Anders v. California*, 386 U.S. 738 (1967), the Court was called upon to evaluate the constitutionality of one such procedure. Specifically, the Court considered "the extent of the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." *Id.* at 739.

Charles Anders was convicted in California state court of felony drug possession, after which he moved for the appointment of counsel to represent him on appeal. Anders' motion was granted, but his appellate counsel subsequently determined that "there was no merit" to Anders' appeal. *Id.* Under then current California law, if appointed appellate counsel concluded "that there are no meritorious grounds of appeal" and the appellate court agreed, after "its own review of the record," counsel's conclusion was considered "correct" and the appeal proceeded "without the appointment of other counsel." *Id.* at 740 n.2. Anders' appellate counsel moved to withdraw by following this procedure. *Id.* at 740. The appellate court agreed with counsel's assessment that "there was no merit" in the appeal and permitted counsel to withdraw, compelling Anders to pursue his appeal of right without benefit of counsel. *Id.* Anders' conviction was upheld by the California

appellate courts, after which Anders petitioned the United States Supreme Court to hear the matter. *Id.* at 740-41.

The *Anders* Court concluded that "California's action does not comport with fair procedure and lacks that equality that is required by the Fourteenth Amendment." *Id.* at 741. In support of this conclusion, the Court observed:

> We cannot say that there was a finding of frivolity by either of the California courts or that counsel acted in any greater capacity than merely as amicus curiae. . .Hence California's procedure did not furnish petitioner with counsel acting in the role of an advocate nor did it provide that full consideration and resolution of the matter as is obtained when counsel is acting in that capacity.

*Id.* at 743.

The Court then outlined certain specific procedures, by which appointed appellate counsel can withdraw, that would pass constitutional muster:

> The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court - not counsel - then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to

16

decision, afford the indigent the assistance of counsel to argue the
appeal.

*Id.* at 743-44.

More than 30 years later, in *Smith v. Robbins*, 528 U.S. 259 (2000), the Supreme

Court re-examined its *Anders* decision. Specifically, the Court examined whether the specific

procedures articulated in *Anders* (described immediately above) were obligatory or merely one

method by which states can adequately protect an indigent criminal defendant's right to appellate

counsel, and if the latter, whether the procedure under challenge survived constitutional scrutiny.

In 1979, California adopted a procedure by which counsel, appointed to represent

indigent criminal defendants on their first appeal of right, could proceed if he concluded that "an

appeal would be frivolous." *Id.* at 265. The procedure in question, referred to as the *Wende*

procedure, required that counsel, "upon concluding that an appeal would be frivolous," file a brief

with the appellate court summarizing the procedural and factual history of the case, with citations

to the record. Counsel had to attest that he had "reviewed the record, explained his evaluation of the

case to his client, provided the client with a copy of the brief, and informed the client of his right to

file a *pro se* supplemental brief." Counsel must also request that the appellate court "independently

examine the record for arguable issues." Upon receiving a "*Wende* brief," the appellate court must

"conduct a review of the entire record," regardless of whether the defendant has filed a pro se brief.

*Id.* If the appellate court also concluded that the appeal was "frivolous," it could simply affirm the

conviction. *Id.* at 266. If, however, the appellate court discerned "an arguable (i.e., nonfrivolous)

issue," it ordered briefing on that issue." *Id.*

The *Robbins* Court first examined whether states were obligated to employ the

specific procedural safeguards articulated in *Anders* or whether such were simply one method by which an indigent criminal defendant's right to appellate counsel can adequately be protected. On this question, the Court held that:

> the *Anders* procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals. States may - and, we are confident, will - craft procedures that, in terms of policy, are superior to, or at least as good as, that in *Anders*. The Constitution erects no barrier to their doing so.

*Id.* at 276.

Having made this determination, the Court then "turn[ed] to consider the *Wende* procedure on its own merits." *Id.* at 276. The Court acknowledged that the rationale underlying the *Anders* decision "has never been explicitly stated, some support being derived from the Equal Protection Clause of the Fourteenth Amendment and some from the Due Process Clause of that Amendment. . .[b]ut our case law reveals that, as a practical matter, the two Clauses largely converge to require that a State's procedure 'affor[d] adequate and effective appellate review to indigent defendants.'" *Robbins*, 528 U.S. at 276. The Court observed that "[i]n determining whether a particular state procedure satisfies this standard, it is important to focus on the underlying goals that the procedure should serve - to ensure that those indigents whose appeals are not frivolous receive the counsel and merits brief required by *Douglas*,[5] and also to enable the State to protect itself so that

---

[5]    In *Douglas v. California*, 372 U.S. 353 (1963), the Court examined the decision by a California appellate court to deny the motion for the appointment of counsel advanced by two indigent criminal defendants seeking to appeal their convictions. *Id.* at 353-54. The appellate court denied the motion for appointment of counsel on the ground that "no good whatever could be served by appointment of counsel." *Id.* at 354-55. The appeal in question nevertheless proceeded and the two defendants were compelled to seek relief without benefit of counsel. *Id.* at 354-56. The *Douglas* Court found the action by the California appellate court violated the Constitution. *Id.* at 355-58. Subsequent decisions by the Supreme Court have clarified that the procedure examined in *Douglas* suffered from three distinct shortcomings: (1) the decision to deny the motion for the appointment of counsel was based on insufficient findings (e.g., there was no finding that an appeal would be frivolous, only that "no good" would be served by appointing counsel); (2) this decision was made without the defendants first receiving assistance of counsel; and (3) following denial of the motion to appoint counsel, the appeal proceeded and defendants were forced to seek relief without assistance of counsel. *See, e.g.,*

frivolous appeals are not subsidized and public moneys not needlessly spent." *Robbins*, 528 U.S. at 277-78. As the Court further observed, "an indigent defendant who has his appeal dismissed because it is frivolous has not been deprived of 'a fair opportunity' to bring his appeal, for fairness does not require either counsel or a full appeal once it is properly determined that an appeal is frivolous." *Id.* at 278 (citations omitted).

The *Robbins* Court found the *Wende* procedure constitutional noting that it is "undoubtedly far better than those procedures we have found inadequate" and "[w]hatever its strengths or weaknesses as a matter of policy, we cannot say that it fails to afford indigents the adequate and effective appellate review that the Fourteenth Amendment requires." *Id.* at 279. In support of this conclusion, the Court compared the *Wende* procedure with other similar procedures that it had found constitutionally deficient. While the Court did not articulate a specific test by which the adequacy of a state's "*Anders* procedure" can be assessed, this aspect of the Court's analysis is nevertheless instructive in understanding the authority on which *Anders* and *Robbins* is based and, by extension, the parameters of the right on which Petitioner's claim to relief is based.

The Court first noted that, "[a]lthough we did not, in *Anders*, explain in detail why the California procedure was inadequate under each of these precedents, our particularly heavy reliance on *Ellis*[6] makes clear that a significant factor was that the old California procedure did not

_____

*Robbins*, 528 U.S. at 280-81; *Penson v. Ohio*, 488 U.S. 75, 77-85 (1988).

  [6]  In *Ellis v. United States*, 356 U.S. 674 (1958), an indigent criminal defendant was denied leave to proceed in forma pauperis on appeal of his criminal conviction. *Id.* at 674. The statute in question permitted a defendant to proceed as a pauper on appeal unless his appeal lacked "good faith." The Court observed that absent evidence of improper motive, "the applicant's good faith is established by the presentation of any issue that is not plainly frivolous." *Id.* Given the right of an indigent criminal defendant to representation by counsel on direct appeal as of right, the Court concluded that "[t]he good-faith test must not be converted into a requirement of a preliminary showing of any particular degree of merit." *Id.* at 675. Thus, denial of leave to proceed as a pauper on appeal must be based on a finding that an appeal would be "frivolous." *Id.*

require either counsel or the court to determine that the appeal was frivolous; instead, the procedure required only that they determine that the defendant was unlikely to prevail on appeal. . .*Wende*, by contrast, requires both counsel and the court to find the appeal to be lacking in arguable issues, which is to say, frivolous." *Id.* at 279-80.

The *Robbins* Court next observed that one of the infirmities of the procedure found wanting in *Anders* and *Penson*[7] was that it permitted counsel to withdraw before a determination was made as to whether counsel's assessment that an appeal was without merit was accurate. *Id.* at 280. The *Robbins* Court next noted that "[i]n *Anders*, we also disapproved the old California procedure because we thought that a one-paragraph letter from counsel stating only his "bare conclusion" that the appeal had no merit was insufficient." *Id.* at 280-81. Finally, the Court observed that "an additional flaw with the procedures in *Eskridge*[8] and *Lane*[9] was that there was only one tier of review

---

[7] In *Penson*, an indigent criminal defendant (Penson) sought to appeal his conviction. *Penson*, 488 U.S. at 77. Appointed appellate counsel later moved to withdraw on the ground that "the case has no merit." *Id.* at 77-78. Without first conducting any review of the underlying record, the appellate court granted counsel's motion to withdraw. *Id.* at 78. The appeal was not terminated, however, because the court of appeals subsequently identified at least one arguable issue Penson could assert on appeal. *Id.* at 78-79. Instead, the appeal proceeded to resolution on the merits without new counsel being appointed to represent Penson. *Id.* The Supreme Court found that Penson's right to counsel on his appeal as of right had been violated. *Id.* at 79-88. Specifically, the Court found the procedure in question failed in the following respects: (1) appellate counsel was permitted to withdraw before any court had first determined whether counsel's assessment of the appeal was accurate; and (2) Penson's appeal proceeded and was decided on the merits without new counsel first being appointed, despite the appellate court's disagreement with counsel's assessment of no merit. *Id.* at 79-88; *see also*, *Robbins*, 528 U.S. at 280.

[8] In *Eskridge v. Washington State Board*, 357 U.S. 214 (1958), Eskridge, seeking to appeal his criminal conviction, moved in the trial court for a free transcript of his trial proceedings which was necessary to pursue his appeal. *Id.* at 214-15. The trial judge denied the request on the ground that Eskridge had received "a fair and impartial trial." *Id.* at 215. The Supreme Court found that Eskridge's constitutional rights were violated because "[t]he conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript." *Id.* at 216.

[9] In *Lane v. Brown*, 372 U.S. 477 (1963), Brown, an indigent criminal defendant, sought certain relief in state court for which a transcript of the proceeding in question was required. *Id.* 477-81. Under Indiana law and procedure, the determination as to whether an indigent was entitled to the transcript in question was made by the Public Defender, who denied Brown's request on the ground that "an appeal would be unsuccessful." *Id.* at 480-82. The Supreme Court found the procedure in question wanting because it permitted "a state officer outside the judicial system" to "take from an indigent all hope of any appeal. . .based on indigency alone." *Id.* at 484-85.

- by the trial judge in *Eskridge* (who understandably had little incentive to find any error warranting an appeal) and by the public defender in *Lane*. The procedure in *Douglas* itself was, in part, flawed for the same reason." *Robbins*, 528 U.S. at 281.

In short, the *Robbins* Court identified the following factors (i.e., safeguards) relevant to any assessment of a state's *Anders* procedure. First, was the decision to permit counsel to withdraw based on a finding of frivolousness (or an absence of "arguable issues") or a lesser finding. Second, was the indigent criminal defendant represented by counsel prior to/during the process by which it was determined whether his appeal would be frivolous. Third, once a finding of frivolousness (or absence of "arguable issues") was made, was the appeal terminated on the merits or permitted to proceed without benefit of counsel for the indigent defendant. Fourth, was counsel's assertion that an appeal would be frivolous accompanied by a detailed discussion of the record and any possible appellate issues or merely based on counsel's "bare conclusions." Fifth, was the decision to allow appellate counsel to withdraw made after "multiple tiers of review" (i.e., review by counsel and a court) or simply made by counsel or a court alone. *See Robbins*, 528 U.S. at 279-82.

There was, however, no suggestion by the *Robbins* Court that the presence or absence of any of these factors is dispositive. Instead, it appears that the factors in question are to be weighed and balanced on a case-by-case basis. It must be remembered, however, that this Court is not tasked with weighing the relevant factors and determining, in its independent judgment, whether Petitioner is entitled to relief. Instead, Petitioner's claim is subject to the deferential standard of review articulated above. While the undersigned might very well make a different recommendation under a less deferential standard of review, an examination of relevant Supreme Court authority leads to

the conclusion that relief is not warranted in this instance.

While the *Robbins* Court did not identify where on the spectrum of procedural safeguards the line between an acceptable and unacceptable procedure lies, the Court did articulate the outer parameters of the right in question. The presence of all the aforementioned safeguards (as the *Wende* procedure embodied) obviously compels a conclusion that the procedure in question satisfies the Constitution. On the other hand, a procedure as deficient as that rejected in *Anders* would compel a conclusion that Petitioner is entitled to relief. An examination of the procedure by which Elmer White was permitted to withdraw his representation of Petitioner reveals that while such falls short of the *Wende* procedure found sufficient in *Robbins*, it does not suffer from the many deficiencies of the procedure rejected in *Anders*. The difficulty which Petitioner encounters in such a circumstance is that there does not exist any clearly established Supreme Court authority holding (or even suggesting) that a procedure falling between those two extremes violates the Constitution. Likewise, the present circumstance does not violate any of the Supreme Court decisions on which *Anders* and *Robbins* were based.

Unlike the procedure rejected in *Anders*, here, the decision to permit counsel to withdraw was based on a finding that any appeal by Petitioner would be frivolous (i.e., lacking in arguable issues). Also, unlike the procedure examined in *Anders*, counsel's assertion in this regard was supported by a detailed discussion of the record and the possible appellate issues. Here, similar to the *Anders* procedure, the decision to permit counsel to withdraw was made after review and analysis by both counsel and a court (i.e., there were "multiple tiers of review"). Also, Petitioner, like the defendants in *Anders*, was represented by counsel prior to/during the process by which it was determined that his appeal was frivolous.

The only factor that arguably weighs in Petitioner's favor is that his appeal was not terminated once it was determined that such would be frivolous and Petitioner was instead compelled to proceed without benefit of counsel. The Court, however, finds this particular factor less significant as it might at first glance appear. While Petitioner was appointed appellate counsel, he never filed an application for leave to appeal. After Elmer White was permitted to withdraw, Petitioner, even after being advised by the trial court that he needed to move for leave to appeal if he wished to pursue relief in the court of appeals, made no attempt to seek such relief and instead filed in the trial court a motion for relief from judgment. Thus, it cannot be said that Petitioner's appeal as of right was denied on the merits without the benefit of counsel, as was the case in *Douglas*, because Petitioner did not move in the court of appeals for leave to appeal. Additionally, unlike the circumstance in *Douglas*, the decision to permit Elmer White to withdraw was based on a determination that an appeal by Petitioner would be frivolous (as opposed to simply lacking merit) and, moreover, Petitioner was represented by counsel throughout that particular process. Thus, any reliance by Petitioner on *Douglas* is unavailing.

The Court also finds that Petitioner's circumstance is not analogous to cases in which relief is warranted on the ground that the petitioner was completely deprived of an appeal because of improper or unconstitutional conduct by counsel. *See, e.g., Roe v. Flores-Ortega*, 528 U.S. 470 (2000) (where appellate counsel failed to timely file notice of appeal and took no other action on defendant's behalf, thereby completely depriving defendant of appellate review or similar process, habeas relief warranted on ground that counsel rendered constitutionally ineffective assistance). While Petitioner did not obtain review in the Michigan Court of Appeals, such was not because of any inaction or deficiency by his appellate counsel. Instead, Petitioner was represented by counsel

who subsequently determined that there existed no non-frivolous issues that could be asserted on appeal.  This assessment was confirmed by the trial court which permitted counsel to withdraw.  As the preceding discussion makes clear, such a result is acceptable under the Constitution provided certain safeguards or protections are observed.  Accordingly, because Petitioner was not completely deprived of an appeal as a result of "unconstitutional" conduct, but instead simply had his attempts to obtain appellate review thwarted pursuant to a procedure that does not violate clearly established federal law, the Court does not analogize the current circumstance to one in which a petitioner was completely deprived of an appeal.

Nevertheless, the Court is troubled that the decision to allow Petitioner's appellate counsel to withdraw was made by the trial court, which as the *Robbins* Court observed likely has little incentive to find the presence of any arguable issues in Petitioner's appeal.  Such cannot form the basis for relief in this matter, however, as the Supreme Court has never held that such violates the Constitution.  Two cases in which the Court invalidated action by an entity other than an appellate court which prevented an indigent defendant from pursuing an appeal do not authorize the granting of relief in this matter.  As previously noted, in *Eskridge* and *Lane* the Court invalidated action taken by the trial court and public defender, respectively.  However, the action rejected in both cases was also premised on a determination that the appeals in question lacked merit or were unlikely to be successful, a finding far below the finding of frivolousness that the Court has made clear is the appropriate safeguard.  Given the Supreme Court's emphasis that withdrawal of counsel and termination of an appeal be based on a finding of frivolousness, the Court cannot conclude that the present circumstance violates the holding in either *Eskridge* or *Lane*.  Stated differently, the Court does not discern *Eskridge* or *Lane* as articulating a legal principle supporting relief which extends

to the present circumstances.

The procedure employed in the present circumstance employs far more safeguards than were present in the procedure rejected in *Anders* and does not run afoul of any other Supreme Court decision on this issue. Accordingly, the Court concludes that the determination that Petitioner's right to counsel on appeal was not denied is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, the undersigned recommends that this particular claim be denied.

The undersigned further recommends, however, that a certificate of appealability be granted as to this claim. To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To obtain a certificate of appealability where a district court has denied a habeas petition on the merits, the petitioner must demonstrate that the claim in question is one on which reasonable jurists could disagree. *See Miller-El*, 537 U.S. at 336. While the Court recommends that Humbert's petition be denied, the Court also concludes that Petitioner satisfies the standard for obtaining a certificate of appealability.

III.      **Unexhausted Claims**

A petition for writ of habeas corpus "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The petitioner properly exhausts his claims by "fairly presenting his federal claims to the state courts." *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (citation omitted). The exhaustion requirement

"is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Id.* Of the five issues asserted in Humbert's Second Amended Petition, the only claims which have been properly exhausted are: (1) the claim that Petitioner was denied his Sixth Amendment right to counsel (Habeas Claim I); and (2) the trial court improperly denied his motion to withdraw his guilty plea (Habeas Claim V). The other three claims in Humbert's petition (Habeas Claims II, III, and IV) were never fairly presented to the Michigan Court of Appeals or Michigan Supreme Court.

On January 9, 2013, the Court issued an Order indicating that these three claims were not properly exhausted. (Dkt. #91). The Court further determined that Petitioner was not entitled to a stay in this matter to return to state court. Accordingly, the Court informed Petitioner that he could either amend his petition to assert only those claims which had been properly exhausted or continue to advance all five claims in his Second Amended Petition, in which case the Court would recommend that Humbert's petition be dismissed as an improper mixed petition. Petitioner opted for the former option, amending his petition to assert only the two claims examined above. In the event that the Court's exhaustion assessment is in error or Petitioner moves to reconsider his decision to jettison his unexhausted claims, the Court will address on the merits the other three claims advanced in Humbert's Second Amended Petition (Habeas Claims II, III, and IV). *See* 28 U.S.C. § 2254(b)(2) (Court can deny on the merits any claim which has not been properly exhausted).

A.    Right to Present an Insanity Defense

Petitioner asserts that his constitutional rights were violated because he was not

permitted to advance an insanity defense to the charges in question.

The United States Constitution guarantees to criminal defendants "a meaningful opportunity to present a complete defense." *United States v. Geisen*, 612 F.3d 471, 495 (6th Cir. 2010) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This right is not without limits, however, and may be reasonably restricted "to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also*, *Taylor v. Illinois*, 484 U.S. 400, 412-13 (1988) ("[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system"); *Couturier v. Vasbinder*, 385 Fed. Appx. 509, 516 (6th Cir., July 13, 2010) ("the right to present a complete defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions") (citation omitted).

Prior to agreeing to the plea bargain described above, Petitioner participated in a forensic examination the results of which revealed that he "was not legally insane" at the time he committed the subject offenses and, moreover, was competent to stand trial. (Dkt. #63-64). There is nothing in the record calling into question this determination. The Court fails to discern how Petitioner's rights were violated by the alleged inability to present a defense for which there existed no support. *See, e.g., Robinson v. Tucker*, 2012 WL 934388 at *11 (N.D. Fla., Feb. 14, 2012) ("the United States Supreme Court never has recognized a federal constitutional right to present an insanity defense"); *Fuentes v. Lewis*, 2012 WL 3882721 at *18 (E.D. Cal., Sept. 6, 2012) ("there is no federal constitutional right to present the defense of insanity"). Accordingly, this claim is rejected.

B.    Due Process

Petitioner next argues that his due process rights were violated because the trial judge "sentenc[ed] a person who was suffering [from Huntington's Disease] at the time of this offense." While it is a constitutional violation to impose sentence on an individual who is incompetent at the time of sentencing, *see, e.g., Comer v. Schriro*, 480 F.3d 960, 983 (9th Cir. 2007), there is nothing in the record to suggest that Petitioner was incompetent (or even ill) at sentencing or at any other time during the course of the proceedings below.  To the contrary, the record indicates that while Petitioner was diagnosed with Huntington's Disease in 2001, his condition at the time of his plea and sentencing was insufficient to even warrant treatment.  (Dkt. #64).  Accordingly, this claim is rejected.


C.    Ineffective Assistance of Counsel

Finally, Petitioner asserts that his trial counsel rendered constitutionally deficient performance "by instructing [Petitioner] to abandon an insanity defense."

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom.  *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411 (2009)).  To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689).  Petitioner's burden is to show that "counsel

28

made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

Petitioner's claim fails for several reasons. First, there is no evidence in the record that would have supported an insanity defense. To the contrary, the results of a competency examination revealed that Petitioner was not legally insane. Thus, counsel's decision to instruct Petitioner to abandon an insanity defense does not constitute deficient performance. Even if counsel's performance in this regard were deficient, Petitioner cannot establish that he suffered prejudice as a result. As previously noted, had Petitioner taken this matter to trial he faced the possibility of life in prison. The record contains no evidence that would have supported an acquittal of any of the charges Petitioner faced. The record likewise contains no evidence that an insanity defense would have been successful. Thus, counsel's advice to forego an insanity defense (and the risk of facing life in prison) to instead accept a plea bargain pursuant to which Petitioner received a sentence of only 30-72 months strikes the Court as the epitome of *effective* assistance of counsel. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Humbert's petition for writ of habeas corpus be **denied**. The undersigned further recommends, however, that a certificate of appealability be granted as to Petitioner's denial of counsel claim.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  February 8, 2013

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge